# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 19-64 |
| JOHN DOUGHERTY<br>BRIAN BURROWS | : | |

# O R D E R

AND NOW, this      day of                    , 2023, upon consideration of the Government's Motion to Admit Evidence of Uncharged Acts, the defendants' response, and having held a hearing on the Motion, it is hereby

# ORDERED

that the Motion is **GRANTED**.

It is **FURTHER ORDERED** that evidence of the following acts is admissible:

1. During 2015 and 2016, defendant John Dougherty authorized, and defendant Brian Burrows approved, the expenditure of Local 98 funds to pay consulting fees to Shane Carey and Richard Lazer, neither of whom performed any significant services for Local 98.

2. These acts are similar to other Overt Acts alleged in the Indictment. They were taken in furtherance of and during the charged conspiracy and done with the intent to take the funds and assets of Local 98 for the defendants' personal use and the personal use of others. For these reasons, they are admissible as uncharged overt acts.

3. In July 2016, and August 2016, defendant John Dougherty arranged and supervised sweeps of the offices of Local 98 and the personal residences of some defendants for

electronic listening devices; defendant Brian Burrows approved the payment, by Local 98, of a total of $37,500 for both sweeps.

4. This evidence is relevant and probative of consciousness of guilt. It has a tendency to make it more probable than not that Dougherty and Burrows acted with the intent to take the funds and assets of Local 98 for their personal use and the personal use of others. Proof of the defendants' intent is an essential element of the conspiracy and embezzlement charges. This evidence also has a tendency to make it more probable than not that the defendants were motivated by personal reasons unrelated to the business interests of Local 98.

5. From 2012 through 2016, defendant Brian Burrows authorized Local 98 to pay Health & Welfare benefits on behalf of defendant Robert Henon, in violation of the terms of the Local 98 Health & Welfare Plan.

6. This evidence has a tendency to make it more probable than not that Burrows acted with the intent to take the funds and assets of Local 98 for his personal use and the personal use of others. Proof of Burrow's intent is an essential element of the conspiracy and embezzlement charges. This evidence also has a tendency to make it more probable than not that Burrows was motivated by personal reasons unrelated to the business interests of Local 98.

7. This evidence is also relevant and admissible to rebut any defense argument that the defendants did not act with the intent to take the funds and assets of Local 98 for their personal use and the personal use of others, but instead, acted in the best interests of Local 98.

8. The probative value of the evidence described above is not outweighed by the potential for unfair prejudice to the defendants.

**BY THE COURT:**

_____
**HONORABLE JEFFREY L. SCHMEHL**
**United States District Court Judge**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 19-64 |
| JOHN DOUGHERTY<br>BRIAN BURROWS | : | |

## GOVERNMENT'S MOTION AND MEMORANDUM OF LAW TO ADMIT EVIDENCE OF UNCHARGED ACTS

The United States of America, by and through its attorneys, Jacqueline C. Romero United States Attorney, and the undersigned attorneys, moves this Court to admit evidence of the following acts:

1)  During 2015 and 2016, defendant John Dougherty authorized, and defendant Brian Burrows approved, the expenditure of Local 98 funds to pay consulting fees to Shane Carey and Richard Lazer, neither of whom performed any significant services for Local 98, and whom the defendants paid for personal reasons unrelated to the business interests of Local 98;

2)  In July 2016, and August 2016, defendant John Dougherty arranged and supervised sweeps of the offices of Local 98 and the personal residence of some defendants for electronic listening devices, for which Local 98 paid, with Burrows' approval, a total of $37,500; and

3)  From 2012 through 2016, defendant Brian Burrows authorized Local 98 to pay Health & Welfare benefits on behalf of defendant Robert Henon, in violation of the terms of the Local 98 Health & Welfare Plan.

For the reasons set forth below, this evidence is relevant and admissible to prove the defendants' participation in the charged conspiracy, the defendants' consciousness of guilt, and the defendants' intent and motive.

## I.     Introduction

The charges that are the subject of the upcoming trial of defendants John Dougherty and Brian Burrows are conspiracy to embezzle the funds and property of Local 98, in violation of 18 U.S.C. § 371 (Count 1), substantive embezzlement counts, in violation of 29 U.S.C. § 501(c) (Counts 2-41), theft from an employee benefit plan, in violation of 18 U.S.C. § 664 (Count 42), wire fraud thefts from Local 98, in violation of 18 U.S.C. § 1343 (Counts 43-66; Dougherty only), wire fraud thefts from a political action committee, in violation of 18 U.S.C. § 1343 (Counts 67-68; Dougherty only), falsification of the annual financial report filed by and required to be kept by a labor union, in violation of 29 U.S.C. §§ 431(b) and 439(b), and 29 U.S.C. §§ 436 and 439(c) (Counts 70-73), filing false tax returns  (Counts 74-83) and conspiracy to accept and the acceptance of unlawful payments from an employer, in violation of 18 U.S.C. § 371 and 29 U.S.C. § 186 (Counts 88-96; Dougherty only).

Trial on Counts 1 through 96 is scheduled to begin on April 24, 2023.  These charges were severed by this Court from Indictment 19-64, which also contained corruption charges against defendants John Dougherty and Robert Henon.  Defendants Dougherty and Henon were convicted of conspiring to commit honest services fraud and federal program bribery, and related substantive offenses, in November 2021.

## II.     Evidence That in 2015 and 2016, Dougherty Used Local 98 Funds to pay People Who did Little or No Work for Local 98, for Personal Reasons Unrelated to the Business Interests of Local 98, is Relevant and Admissible as Uncharged Overt Acts Committed in Furtherance of the Conspiracy to Embezzle Local 98 Funds.

The government intends to present evidence that in January 2016, Dougherty directed defendant Marita Crawford to pay Shane Carey $3,000 in "consulting" fees from the Local 98 COPE Funds to work for Dougherty's brother, Kevin Dougherty, who had just been elected to

the Pennsylvania Supreme Court. Burrows approved the payment and signed the check. Carey did no work for Local 98.

From July 2015 to December 2015, Dougherty paid Richard Lazer $4,000 per month, as a consultant, by Local 98. Burrows approved the payments and signed the checks. At the time, Lazer was working full-time as the campaign manager for the mayoral campaign of Jim Kenney, who had won the Democratic primary in May 2015. Lazer was also a member of Kenney's transition team. Lazer testified at the trial of the corruption counts that defendant John Dougherty offered him the job, and that he was required to do little or nothing for the money.

The acts described above, which were committed in furtherance of, and during the charged conspiracy, are relevant and admissible as uncharged overt acts. It is well-settled that the government may prove a conspiracy through overt acts other than those set forth in the indictment. *United States v. Adamo*, 534 F.2d 31, 38 (3d Cir. 1976) ("the government is not limited in its proof at trial to those over acts alleged in the indictment"); *United States v. Sempf*, 649 Fed. App'x. 270, 272 (3d Cir. 2016); *accord United States v. U.S. Gypsum Company*, 600 F.2d 414, 419 (3d Cir. 1979).

These acts are identical to some of the Overt Acts in Count One, which charged the defendants with conspiracy to embezzle from Local 98. Count One alleged Overt Acts that were "instances in which defendant JOHN DOUGHERTY authorized the expenditure of Local 98 funds to pay no-show employees, or make payments to non-employees . . . who defendant DOUGHERTY favored for personal or political reasons unrelated to the business interests of Local 98." *Count One*, Overt Act 19. Defendant Brian Burrows approved and signed the checks for the consulting fees described below, as well as the payments for Family Member

No. 8 and a classmate to attend a basketball tournament in Costa Rica. These Overt Acts are described below.

  Paying Family Member No. 7 during 2013-16 for weeks when Family Member No. 7 was on vacation, attending school full-time, or not working for Local 98. Overt Act 19a.

  Paying Family Member No. 8 during 2013 and 2015 for weeks when Family Member No. 8 was attending school full-time, and at a basketball tournament in Costa Rica; Local 98 also paid for a classmate of Family Member No. 8 to attend the tournament. Overt Acts 19b, c and d.

  Paying Family Member, No. 9 in September 2015, $7,500 for "consulting" work never performed. Overt Act 19i.

  Paying Individual No. 1, a close relative of defendant MARITA CRAWFORD, an extra week's pay in January 2016. Overt Act 19j.

  Paying Individual No. 8, an office employee of Local 98, during 2014, 2015, and 2016, double pay or other payments for work Individual No. 8 did not perform, and an additional $1,500 to Individual No. 8, because Individual No. 8 was purchasing a new house. Overt Acts 19e-g.

  Paying $5,000, as a "consulting payment," to Individual No. 3, in May 2016, in exchange for Individual No. 3 accompanying defendant MARITA CRAWFORD on a personal trip to Florida. Overt Act 19k.

The expenditures of Local 98 funds to Carey and Lazer, who did little or no work in return, which were authorized by Dougherty and approved by Burrows, were done in furtherance of, and during the charged conspiracy, and with the intent to take the funds and assets of Local 98 for the defendants' personal use and for the personal use of others. For these reasons, they are admissible as uncharged overt acts.[1]

---

[1] The inclusion of these uncharged overt acts in this motion is not a concession by the government that it cannot properly introduce at trial evidence of other uncharged overt acts. In that instance, which is likely, the government will give the defense as much advance notice as possible.

**III. Evidence that in July and August of 2016, Dougherty Directed Sweeps of Local 98 Properties, and his Home, for Listening Devices, for Which Local 98 Paid $37,500 is Relevant and Admissible as Evidence of the Defendants' Consciousness of Guilt.**

In July 2016, and August 2016, defendant John Dougherty arranged and supervised sweeps of the offices of Local 98 and his residence for electronic listening devices, for which Local 98 paid $16,000 and $21,500, respectively. The payments were authorized by defendant Brian Burrows, who signed the checks.

The first sweep was conducted on July 7, 2016, at night. During the sweeps, Dougherty instructed Local 98 employees Brian Stevenson and Bryan Burrows (son of defendant Brian Burrows) to be present and observe the security consultants work, and to make sure all areas about which Dougherty was concerned were swept.

The second sweep was conducted on August 8, 2016, again at night, three days after the FBI executed search warrants on the offices of Local 98 and the residences of John Dougherty and the other defendants. Dougherty again arranged for security sweeps of numerous buildings, including Dougherty's personal residence, and the homes of his sister Maureen Fiocca (who lived next door to Dougherty), and of defendant Michael Neill. During the second sweep, Dougherty once again instructed Local 98 employee Brian Stevenson to be present and observe the security consultants work, and to make sure all areas about which Dougherty was concerned were swept.

This evidence is relevant and probative of consciousness of guilt; it reflects a level of concern consistent with someone involved in illegal activity. "Consciousness of guilt of the underlying charges is a proper purpose under Rule 404(b)." *United States v. Weigand*, 2021

WL 1424728, *7 (E.D.Pa. April 15, 2021) (Leeson, J.,) (evidence that defendant contacted potential witness admissible and relevant to show consciousness of guilt). Evidence that a defendant employed "anti-bugging devices" to "frustrate electronic surveillance is relevant to the defendants' intent and is also relevant to show their 'consciousness of guilt.'" *United States v. Persico*, 621 F. Supp. 842, 860 (S.D.N.Y. 1985) (court denied motion to strike allegations of sweeps for listening devices from indictment). *United States v. Grace*, 2007 WL 9735453, *1 (N.D. Ala. May 9, 2007) (defendant who declined to speak over phone with a cooperating witness, expressed concern that witness's phones and email were bugged, and expressed relief when witness told defendant they had been swept for bugs "exhibited a nervousness and wariness of one aware that he is violating the law"); *see also United States v. Pawlowski*, 351 F.Supp.3d 840, 847 (E.D. Pa. 2018) (Sanchez, J.) (evidence admitted at trial that Pawlowski swept his office for electronic eavesdropping devices showed that he was "paranoid about his conduct being detected, and took this and other actions to "shield his conduct from being discovered").

  The evidence of the sweeps for listening devices conducted by Dougherty, and the expenditure of $37,500 of Local 98 funds by Burrows to pay for them, is also relevant and admissible to prove the defendants' intent, an essential element of the conspiracy and embezzlement charges against the defendants, and to prove motive. This evidence has a tendency to make it more probable than not that the defendants were aware of the nature of their conduct, and acted with the intent to take the funds and assets of Local 98 for their personal use and the personal use of others. This evidence, which reflects a high degree of concern that third parties had overheard their conversations with others, including their codefendants, also has a tendency to make it more probable than not that Dougherty and

Burrows were motivated by personal reasons unrelated to the business interests of Local 98.

Rule 404(b) of the Federal Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Evidence of other crimes is admissible if it is relevant and introduced for any purpose other than simply demonstrating character. *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017) ("In sum, Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also "inclusive" in that it does not limit the non-propensity purposes for which evidence can be admitted."); *see also United States v. Daraio*, 445 F.3d 253, 256-57, 264-66 (3d Cir. 2006) (defendant convicted of evading payroll taxes between from 1994 through 1998; district court did not err in admitting evidence that the defendant previously failed to comply with the tax laws in 1984, 1989–1993, 1999-2004 to show intent). The purposes for which such evidence may be offered are not limited to those listed in the rule. *See, e.g., United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988) (relevant evidence can be admitted for any reason, "so long as it is used for a purpose other than proving a defendant's likelihood to have committed this particular crime based on an inference drawn from evidence pertaining to his character.").

Rule 404(b) evidence is admissible if: (1) the evidence is offered for a proper purpose, (2) the evidence is relevant, (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice, and (4) the trial court, upon request, instructs

the jury that the evidence is to be considered only for the proper purpose for which it was admitted. *See Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Givan*, 320 F.3d 452, 460-61 (3d Cir. 2003) (six-year-old drug distribution conviction was properly admitted to show knowledge and intent of defendant who was found in a car with heroin hidden under his seat).

Rule 402 of the Federal Rules of Evidence states, in part, "All relevant evidence is admissible, except as otherwise provided by law." Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Third Circuit has stated that "[t]he definition of relevant evidence is very broad . . . Rule 401 does not raise a high standard." *Moyer v. United Dominion Industries, Inc.*, 473 F.3d 532, 544-545 (3d Cir. 2007) (internal quotations and citations omitted). Facts of consequence are not restricted to the essential elements of the charged offense.

To establish relevance, the party offering the evidence is only required to provide a reasonable explanation of how the evidence makes a fact of consequence more or less likely. Relevance under Rule 401 is not a competition between possible explanations of the evidence's significance. That a party contesting admissibility may be able to supply an alternate explanation of the evidentiary significance of the evidence does not affect this determination. *See Old Chief v. United States*, 519 U.S. 172, 179, 184 (1997) (an alternative explanation of the nature of the contested evidence is not germane to the relevance determination under Rule 401); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 921 (3d Cir. 1985) ("evidence need not lead inescapably towards a single conclusion to be relevant, it need only make certain facts more probable than not."). Resolving conflicting explanations of evidence is for the jury. *See*

*DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1202 (3d Cir. 1978) (alternate explanations go to weight, not admissibility).

Count One alleges that, in furtherance of the conspiracy, defendants John Dougherty, Brian Burrows, Marita Crawford, Michael Neill, and others unlawfully made personal use of the funds and assets of Local 98 and the Apprentice Training Fund and concealed their crimes by falsely representing that the funds were used for legitimate, business-related expenses. One of the essential elements of the embezzlement charges that the government must prove is an intent to deprive the union of its assets, to take the funds and assets of Local 98 for the defendants' personal use and the personal use of others.

The evidence is also relevant and admissible to prove motive. *See e.g., United States v. Sriyuth*, 98 F.3d 739, 747 n. 12 (3d Cir. 1996) ("motive is always relevant in a criminal case"). The Third Circuit model jury instruction concerning motive reads as follows:

> Motive is not an element of the offense with which the defendant is charged. Proof of bad motive is not required to convict. Further, proof of bad motive alone does not establish that the defendant is guilty and proof of good motive alone does not establish that the defendant is not guilty. Evidence of the defendant's motive may, however, help you find the defendant's intent.

*Third Circuit Model Jury Instruction* 5.04.

The evidence of the sweeps for listening devices conducted by Dougherty, and the expenditure of $37,500 of Local 98 funds by Burrows to pay for them, is relevant and admissible to prove the defendants' intent, an essential element of the conspiracy and embezzlement charges against the defendants, and to prove motive. This evidence has a tendency to make it more probable than not that the defendants were aware of the nature of their conduct and had acted with the intent to take the funds and assets of Local 98 for their

personal use and the personal use of others. This evidence, which reflects a high degree of concern that third parties had overheard their conversations with others, including their codefendants, also has a tendency to make it more probable than not that Dougherty and Burrows were motivated by personal reasons unrelated to the business interests of Local 98.

IV. **Evidence of Brian Burrows' Violation of the Terms of the Local 98 Health & Welfare Plan to Provide Robert Henon with Health Care Benefits to Which Henon was not Entitled, and Which Local 98 Paid for, is Relevant and Admissible Under Rule 404(b) to Prove His Intent and Motive.**

Prior to being elected to City Council, defendant Robert Henon, who was previously convicted of honest services wire fraud, was the Political Director of Local 98, a job he had held since 2003. During January and February of 2012, Henon was paid his full salary from Local 98, despite the fact that he began serving his first term as a member of City Council on January 6, 2012.

In February of 2012, defendant Brian Burrows instructed the Local 98 finance office that Henon should be paid for 20 hours of work per week, but that his benefits should be calculated as if he was being paid for 27 hours per week. That arrangement continued through 2015 and 2016.[2]

If Henon's benefits had been based on the 20 hours per week for which he was paid, he would not have been eligible to be part of Local 98's Health and Welfare Plan, the costs of which are fully funded by Local 98. The Plan required an employee to work 350 hours per quarter to maintain eligibility.[3] Once Burrows allowed Henon to be "credited" with 27 hours per week, at 13 weeks per quarter, his hour for purposes of the Health and Welfare Plan

---

[2] This evidence was presented during the corruption trial. The benefits paid on Henon's behalf by Local 98 were alleged to be part of the "stream of benefits" that constituted the bribes that were the subject of the honest services fraud charges against Henon and Dougherty. The government does not contend that the improper payment of Henon's health benefits was an embezzlement.

[3] Henon did not even work 20 hours per week for Local 98.

- 10 -

equaled 351 hours, which just made him eligible. Burrows never told any of the other Trustees about this; nor did he inform the members of Local 98, whose dues paid for Henon's salary and benefits. From 2012 through 2016, Local 98 paid $132,162.72 for health care coverage for Henon in violation of the Plan.

This was no mistake by Burrows, who was a Trustee of the Plan in 2011 and 2012; it was an end-run around, and in violation of, the eligibility requirements of the Health and Welfare Plan. The minutes of Trustees' Meetings that Burrows attended between January 27, 2010, and September 26, 2012, reflect that on numerous occasions, the Trustees denied members' requests for health care coverage and benefits for failure to satisfy the requirements of the Plan. On at least one occasion, a member's request for benefits was denied because the member, like Henon, did not work the required number of hours to maintain eligibility.

This evidence has a tendency to make it more probable than not that Burrows acted with the intent to take the funds and assets of Local 98 for his personal use and the personal use of others. Proof of Burrow's intent is an essential element of the conspiracy and embezzlement charges. This also is relevant to prove Burrow's motive.

This evidence is also relevant and admissible to rebut any argument that Burrows did not commit the charged crimes with the requisite intent, but instead acted in the best interests of Local 98. Evidence that rebuts a theory of the defense, and thus makes a fact of consequence to a defendant less likely, is also relevant evidence which may be presented in the government's case-in-chief. *See United States v. Kemp*, 500 F.3d 257, 296-297 (3d Cir. 2007) (evidence disproving defendant's claims of wealth was relevant; defendant sought to negate his motive to launder money by claiming great wealth).

## V. The Probative Value of This Evidence is Not Substantially Outweighed by the Danger of Unfair Prejudice.

The probative value of the evidence that is the subject of this motion is not substantially outweighed by the danger of unfair prejudice, and therefore is admissible under Rule 403, which states as follows:

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
> Fed. R. Evid. 403.

Rule 403 is an exception to the mandatory admission of relevant evidence; therefore, exclusion of evidence under Rule 403 should be "used sparingly." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). Courts have universally recognized that "Virtually all evidence is prejudicial or it is not material." *See, e.g., Carter v. Hewitt*, 617 F.2d 961, 972, n.14 (3d Cir. 1980), *quoting Dollar v. Long Manufacturing Co.*, 561 F.2d 613, 618 (5th Cir. 1977).

Evidence is unfairly prejudicial if it suggests a "decision on an improper basis, commonly, though not necessarily, an emotional one." *See* Advisory Committee Note to FRE 403. Evidence is not "unfairly prejudicial" simply because it is "undesirable from the defendant's perspective." *Cross*, 308 F.3d at 324 n. 23. Rather, the issue of "unfairness" is whether "the proponent would secure an advantage that results from the likelihood [that] the evidence would persuade by illegitimate means." *United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992) (emphasis added).

To deny the government the use of the evidence described above would be to impermissibly shield the defendants from their own acts and deny the jury information that is clearly relevant to prove their intent and motive. Rule 403 is not intended to have such an

illogical and unjust impact. *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) ("Rule 403 does not provide a shield for defendants who engage in outrageous acts . . . It does not generally require the government to sanitize its case") (*quoting United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998)).

The evidence that: 1) defendant John Dougherty paid people other than those described in the Indictment with Local 98 Funds for doing little or no work; 2) Dougherty swept the Local 98 offices and his residence for listening devices; and 3) defendant Brian Burrows authorized Local 98 to pay $132,162.72 for health benefits to Robert Henon, in violation of the Local 98 Health & Welfare Plan, is probative of the defendants' intent, which an essential element of the embezzlement offenses, as well as the defendants' motive, and is not being offered for an improper basis.

For these reasons, the probative value of this evidence is not outweighed in any way, much less substantially, by the danger of unfair prejudice. Rule 403 "creates a presumption of admissibility . . . when evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *Cross*, 308 F.3d at 323.

This evidence is less prejudicial than other evidence admitted in this circuit under Rule 404(b). *See, e.g., United States v. Repak*, 852 F.3d 230, 249–50 (3d Cir. 2017) (evidence of an affair between defendant and his secretary was both relevant and probative with regard to his *mens rea* and motivation to commit bribery, and any risk of unfair prejudice did not substantially outweigh that probative value); *United States v. Jones*, 566 F.3d 353, 364 (3d Cir. 2009) (uncharged assaults which were necessary to prove existence of charged criminal enterprise were highly probative and admissible under Rule 403); *United States v. Ali*, 493 F.3d 387, 391 (3d Cir. 2007) (same result for uncharged extortions); *United States v. Jemal*, 26 F.3d

1267, 1272, 1276 (3d Cir. 1994) (evidence that defendant had participated in prior bank frauds, and advised an accomplice to create a false lease similar to one that was part of the charged scheme; district court was well within its discretion in holding that the probative value of this evidence was not substantially outweighed by any unfairly prejudicial effect). Here, the risk of an adverse reaction by the jury does not "substantially outweigh" the probative value of the evidence.

In *United States v. Gartmon*, 146 F.3d 1015 (D.C. Cir. 1998), the defendant, who was convicted of securities fraud and money laundering, argued on appeal that the district court improperly admitted evidence that after a female accomplice attempted to withdraw from scheme, the defendant sexually assaulted her with a gun. The court of appeals concluded that the admission of the evidence, which constituted "direct evidence of Gartmon's knowing involvement in, and direction of, the scheme to defraud" was not an abuse of discretion, because the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under Rule 403. Id. at 1020-21. The evidence in question here is more probative, and less prejudicial than the evidence admitted in *Gartmon*.

As set forth above, the evidence that is the subject of this motion has the tendency to make facts of consequence more probable than they would be without the evidence. The evidence is probative of an essential element of the embezzlement charges - the defendants' intent pertaining to their participation in the conspiracy to commit these offenses. The evidence is also relevant to prove motive. The probative value of this evidence is not outweighed in any way, much less substantially, by the danger of unfair prejudice.

## VI. Conclusion.

The evidence that: 1) defendants John Dougherty and Brian Burrows paid people other than those described in the Indictment with Local 98 Funds, during the period charged in the Indictment, for doing little or no work; 2) Dougherty swept the Local 98 offices and his residence for listening devices, for which Burrows paid $37,500 in Local 98 funds; and 3) Brian Burrows authorized Local 98 to pay more than $132,000 for health benefits to Robert Henon, in violation of the Local 98 Health & Welfare Plan, is proof of the defendants' participation in the charged conspiracy, is probative of the defendants' intent, which is an essential element of the conspiracy embezzlement offenses, as well as the defendants' motive, and is not being offered for an improper basis. The probative value of this evidence is not outweighed in any way, much less substantially, by the danger of unfair prejudice. For these reasons, this evidence should be admitted.

Respectfully submitted,

JACQUELINE C, ROMERO
United States Attorney

*/s/ Frank R. Costello, Jr.*
ANTHONY CARISSIMI
FRANK R. COSTELLO, JR.
JASON GRENELL
BEA L. WITZLEBEN
Assistant United States Attorneys

Dated: 2/15/23

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing response with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants, who are identified below.

Carrie Cinquanto and Alan Tauber
Counsel for Defendant John Dougherty

Thomas Bergstrom and Mark Kasten
Counsel for Defendant Brian Burrows

                                                  */s/ Frank R. Costello, Jr.*
                                                  FRANK R. COSTELLO, JR.
                                                  Assistant United States Attorney

Dated: 2/15/23