**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 19-64-01** |
| **JOHN DOUGHERTY** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT JOHN DOUGHERTY'S MOTION FOR CONTINUANCE OF OCTOBER 2023 TRIAL DATE**

The United States of America, through its attorneys, Jacqueline C. Romero, United States Attorney, and the undersigned attorneys, respectfully submits this response in opposition to defendant John Dougherty's Motion to Continue the trial date of October 30, 2023. For the reasons set forth below, the motion should be denied.

**I.     BACKGROUND**

On April 12, 2023, the Court ordered that the embezzlement trial in this case would commence on May 8, 2023. ECF 473. The next day**,** Carrie Cinquanto, who represented defendant Dougherty at that time by appointment, informed the Court that Dougherty had acquired the funds to hire an attorney, and, on April 24, 2023, told the Court that Dougherty intended to retain Gregory Pagano to represent him, replacing her and her co-counsel, Alan Tauber. ECF 480.

On April 25, 2023, the Court held a conference call with all counsel, including Mr. Pagano. In that call, Mr. Pagano told the Court that he and Dougherty had reached an agreement that Mr. Pagano would be retained to represent Dougherty for the embezzlement trial in this case (and the separate extortion case at Cr. 21-65), and that Mr. Pagano was going to enter his

appearance. Mr. Pagano also requested a continuance of the embezzlement trial in this case to January 2024. Counsel for Dougherty's co-defendant, Brian Burrows, stated that he could only agree to a continuance to September of 2023. The Court informed the parties that it was considering a trial date in the Fall of 2023.

On April 27, 2023, Ms. Cinquanto filed an amended motion for a brief continuance. ECF 480. Burrows objected. ECF 479. On April 28, 2023, the Court continued the trial indefinitely, to allow Dougherty to exercise his Sixth Amendment right to his counsel of choice, and to resolve a potential conflict of interest involving Mr. Pagano. ECF 482.

On May 2, 2023, counsel for Burrows, by letter, requested a trial date of September 11, 2023. The Court held a status hearing on May 4, 2023, at which time Mr. Pagano entered his appearance on behalf of defendant Dougherty. ECF 485. By letter dated May 19, 2023, Mr. Pagano, citing the amount of discovery in the case, and an unexpected family matter that required him to spend time out of state, requested a trial date in January 2024.

On June 15, 2023, this Court ordered that the trial would start on October 9, 2023, or October 30, 2023, depending on whether a trial in Chester County, for which Mr. Pagano was attached, would start on October 2, 2023. ECF 506.

On September 18, 2023, this Court ordered that the trial would start on October 30, 2023, or, if the parties were unavailable, on November 6, 2023. ECF 533. That same day, Mr. Pagano filed the instant motion to continue the trial until on or after January 8, 2024. ECF 534. For the reasons set forth below, the motion should be denied. A denial of the motion would neither deprive the defendant of any constitutional right, nor constitute an abuse of discretion.

II.     **THE DEFENDANT'S PROFFERED REASONS FOR ANOTHER CONTINUANCE DO NOT JUSTIFY GRANTING THE DEFENDANT'S MOTION.**

Defendant Dougherty's counsel cites the complexity and scope of the pending charges, the volume of discovery, and the limited availability of his client as the reasons for seeking a continuance. These factors do not justify another continuance in this case.

**A. The Nature of the Charges and Volume of Discovery Do Not Justify Another Continuance**

As co-defendant Burrows has acknowledged, the charges to be tried in this case - the embezzlement case – although dense, are not especially complex. The indictment alleges that through several different means - primarily through falsely billing Local 98 for construction work done on residences and commercial businesses owned by the defendants, and through personal purchases made using Local 98 credit cards - the defendants embezzled assets from the union. While there are numerous charged transactions, they can be easily grouped into a just a few categories. In connection with this conduct, the defendants created false records and government forms, and did not report their ill-gotten gains on their federal tax returns. Defendant Dougherty is also charged with illegally accepting things of value from a signatory contractor.

The volume of discovery is undoubtedly large. However, a significant portion of the discovery is not related to the embezzlement case; it pertained to the corruption charges that were tried in 2021. Furthermore, Dougherty's current counsel – his third – has not had to start from scratch in handling the discovery.[1] In a letter to the Court dated June 15, 2023, prior

_____

[1]   On July 11, 2023, the government sent defendant Dougherty's current counsel all discovery emails and indices that accompanied the discovery productions for the period from indictment (January

defense counsel, whose appointment in the case continued until May 30, 2023, represented that

to assist Mr. Pagano they:

> met numerous times with Mr. Pagano and his team, both in person and
> telephonically; provided Mr. Pagano with both our paper and electronic
> files; and have made ourselves available to discuss any issues pertinent to
> Mr. Dougherty's defense. Despite our appointments ending on May 30,
> 2023, going forward both Mr. Tauber and I will continue to make ourselves
> available to Mr. Pagano.

The government has also assisted Mr. Pagano on numerous occasions by responding to

his requests for locating certain items within the discovery. (See Exhibit B, which contains a few

examples.) The government will continue to assist defense counsel in this regard to the extent

possible.[2]

The defendant notes in his motion that there are a total of 109,006 Title III intercepted

calls audio and text messages, as well as 58,248 hours of video surveillance footage (most of it

obtained from pole cameras).[3] Of course, the government does not intend to present thousands

of recorded telephone calls and text messages at trial. In fact, it currently intends to play

approximately 549 calls, most of which are less than 5 minutes in duration. The total running

time of all the calls the government currently intends to play in its case-in chief is approximately

---

29, 2019) through January 2020, and the discovery produced in February 2023. (See Exhibit A). Because
the attachments contain non-public information, they have been filed under seal.

    [2] The defendant himself, of course, has had access to the discovery material since 2019, and has
professed to have reviewed it. At a union meeting on August 6, 2020, defendant Dougherty made the
following announcement: "I read, remember I read all the f***ing paperwork. I got all the paperwork. I
could tell you every f***ng interview, everything everybody said about (UI). I got it all. In fact, I got a
computer downstairs getting upgraded again to take with me so I can follow-up this weekend. I can tell
you what [name redacted] said for four and a half hours. Okay. I can tell you what [name redacted] said.
I can tell you who tried to cut a deal. I can tell you who they went to. I know all that."

    [3] The total number of calls intercepted on Dougherty's phone was 17,976; the number of text
messages was 50, 987. Most of the text messages were no longer than one sentence.

7 hours and 40 minutes. (For comparison, during the trial of the corruption counts, the government played approximately 150 calls that had a total duration of approximately 8 hours and 30 minutes.) Many of these calls were previously identified to defense counsel in April of 2023, and transcripts of the portions the government intends to play were also produced. The government intends to send an updated list of calls it intends to play, and transcripts of the portions of the calls it intends to play, to defense counsel by September 29, 2023.

In support of his motion, the defendant cites a recent (August 31, 2023) discovery production, which he describes as "consisting of approximately 1200 pages and 64 videos totaling approximately 125 hours." This production was accompanied by a detailed description of the items and an index, as were all prior productions. (See Exhibit C). That production included the following materials, many of which were recently obtained:

Eighteen memoranda of interviews, all but one of which were conducted in March, April and May of 2023;

GoFundMe Records pertaining to the Costa Rica Trip of defendant John Dougherty's niece Maureen Fiocca (Family Member #8), which is charged in Overt Act 19(c);

Records concerning George Fiocca, defendant John Dougherty's nephew (Family Member #9), who allegedly received money for consulting services that were never provided, as charged in Overt Act 19(i). These records were disclosed as possible impeachment evidence, and consisted of bank records, payroll records, and records of reimbursements and payments to him in 2009 and 2011 from Local 98 (These records consist of 485 pages, approximately one third of the production);

A document concerning Aramark tickets and gratuities, which was simply a better copy of a previously-produced document; and

Records and correspondence recently produced by the IBEW in Washington, DC, much of which was sent to or involved the defendants. (These records consist of 726 pages, approximately half of the 1,550 pages produced.)

The production also included pole camera footage from Doc's Union Pub, from October 16, 17, 18 and 20 of 2015. Because the pole camera operated 24 hours per day, this resulted in a total of 96 hours of footage. The government currently intends to present approximately one hour of this footage. Additional video footage from pole camera and in-store cameras with a total running time of approximately 2 hours will be presented at trial. The government will identify and produce the video footage it intends to play at trial in advance of trial.

Furthermore, the government responded the same day to Mr. Pagano's question concerning the production. (See Exhibit C).

**B. Prior Counsel for Dougherty was Given the Same Amount of Time to Prepare for Trial That New Counsel Has Had.**

On November 2, 2022, the Court appointed Caroline Goldner Cinquanto to represent Dougherty, and ordered Dougherty to pay $10,000 a month toward the cost. ECF 372. On January 5, 2023, Ms. Cinquanto filed a motion to continue the trial of the embezzlement counts until September 2023, citing most of the same reasons as current counsel cites in the instant motion: the number and scope of the pending charges, the volume of discovery, and the need to prepare for trial. ECF 400. On January 9, 2023, the Court continued the trial until April 24, 2023. ECF 407.

On February 13, 2023, Ms. Cinquanto submitted a letter to the Court stating that Dougherty had settled a civil case for $550,000, and could have access to those funds in 30 days. Dougherty had previously informed the Court that he intended to use the proceeds of the suit, which had been pending at that time, to hire new counsel. On March 13, 2023, the Court conducted a telephone call with all counsel. The pending pretrial motions were discussed. ECF 457. Ms. Cinquanto asked for a trial continuance of at least 30 days citing, among other things,

the amount of time involved in preparing pretrial motions.  On March 26, 2023, Ms. Cinquanto

filed a motion to continue the embezzlement trial, arguing that the trial could not go forward

until the motion to dismiss based on alleged conflicts of prior counsel was resolved.  ECF 463.

On April 12, 2023, the Court ruled that the embezzlement trial could proceed before the conflict

motion was resolved. ECF 475.

On April 12, 2023, the Court ordered that the embezzlement trial would commence on

May 8, 2023. ECF 473.  On April 13, 2023, Ms. Cinquanto informed the Court that Dougherty

had, in fact, acquired the funds to hire an attorney as the result of the civil suit mentioned above,

and on April 24, 2023, told the Court that Dougherty intended to retain Gregory Pagano to

represent him, replacing her and Mr. Tauber. ECF 480.  As this record makes clear, prior to the

entry of Mr. Pagano in this case, prior (and second successive) counsel for Dougherty was

granted approximately six months (11/2/22 – 5/8/23) to prepare for trial.  Here, Mr. Pagano

entered his appearance on May 4, 2023; the October 30, 2023, trial date is approximately six

months from May 4.

Mr. Pagano was aware, before entering his appearance, that the Court was not inclined to

continue the case to January of 2024.  As noted above, *see supra,* pp.1-2, during the April 25,

2023, conference call, in which Mr. Pagano advised the Court that he was being retained to

represent Dougherty for this case, Dougherty's co-defendant said, through counsel, that he would

only agree to a continuance to September of 2023, and the Court made clear that it was

considering a trial date in the Fall of 2023.

**C. The Defendant's Alleged Unavailability Does Not Justify Another Continuance.**

The defendant also claims that "the staffing of nurses attending to the constant medical care of his very sick wife . . . complicat[es] and limit[s] the scheduling of meetings with Mr. Dougherty." Mtn. at 5. The motion also says that the defendant's wife requires 24-hour care, but does not explicitly mention that his wife has, upon information and belief, been receiving home health care since August 2019.

The government notes that none of the attorneys who previously represented defendant Dougherty (since 2019) raised his wife's illness as a reason for the defendant to be unavailable.[4] Indeed, from August 2019, through December 2021, the defendant held two full time positions (Local 98 Business Manager and Philadelphia Building Trades President) despite his wife's health condition. Additionally, it must be noted that the defendant has two adult children living in the area who seem entirely capable of assisting in scheduling the nurses who care for his wife.

**III.    THE PUBLIC, THE GOVERNMENT, AND DOUGHERTY'S CO-DEFENDANT ALL HAVE AN INTEREST IN A SPEEDY TRIAL.**

When a Court is considering a motion to continue a trial, the public's interests must also be considered. Mr. Dougherty was charged with the crimes at issue in late January of 2019. On November 2, 2020, upon defense motions, the case was severed into two trials, and in January of 2021, this Court entered an Order establishing that the trial on Counts 97-116 would occur before

---

[4] Defendant Dougherty's motion also states that the reason his initially-retained counsel withdrew was "due to allegations of conflicts of interest." Mtn. at 3. However, the record in this case demonstrates that the primary reason his first retained counsel moved to withdraw was Dougherty's refusal to communicate with counsel. ECF 345 at 3. *See also* ECF 375 (transcript of 9/2/2022 hearing).

the trial on Counts 1-96. Approximately ten months later, in early October of 2021, trial

commenced on the corruption charges (Counts 97-116).  In mid-November of 2021, Mr.

Dougherty was convicted of corruption crimes.  He remains unsentenced on those crimes,

pending the resolution of the embezzlement charges against him.  Additional delay is not in the

public interest, unless such a delay is clearly necessary to provide Mr. Dougherty with effective

assistance of counsel.

The government submits that defendant Dougherty's current counsel, who has extensive

experience in criminal cases and is well-regarded, can be prepared to effectively represent the

defendant at trial on October 30, 2023.

Co-defendant Burrows filed a motion on June 5, 2023, alleging that his Speedy Trial

rights had been violated due to the length of time that had elapsed since the indictment in this

case.  Although the Court properly found that neither the Speedy Trial Act nor the Sixth

Amendment had been violated, his rights and professed desire for trial must be considered here.

## IV.     DENIAL OF THE DEFENDANT'S MOTION WOULD NOT CONSTITUTE AN ABUSE OF DISCRETION.

The factors a court should consider when presented with a motion for a continuance

include the efficient administration of criminal justice, the accused's rights, including an

adequate opportunity to prepare his defense, and the rights of other defendants whose trials are

delayed because of the continuance.  *United States v. Olfano*, 503 F.3d 240, 246 (3d Cir. 2007);

*United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1194–95 (3d Cir. 1984).  Here,

balancing these three factors weighs in favor of denying the defendant's motion. Under the

circumstances of this case, this would not be an abuse of this Court's discretion. *See Ungar v.*

*Sarafite*, 376 U.S. 575, 589 (1964); *Paullet v. Howard*, 634 F.2d 117, 119 (3d Cir. 1980) (per

curiam) (appellate court will reverse the lower court's decision to deny motion for a continuance only if the denial was an abuse of discretion).  *See also United States v. Lacerda*, 958 F.3d 196, 211–14 (3d Cir. 2020) (district court did not abuse its discretion by denying the defendant's request for a continuance where court considered relevant factors; defense counsel had eight months to prepare); *United States v. Kemp*, 379 F. Supp. 2d 690, 698–99 (E.D. Pa. 2005), *aff'd*, 500 F.3d 257 (3d Cir. 2007) (denial of defense motions for continuances did not deny defendants' due process rights; some defendants had approximately six and a half months to prepare).

The issue presently before this Court is not whether counsel might benefit from additional time.  The issue is whether a careful consideration of the efficient administration of criminal justice, the defendant's rights, including giving counsel an adequate opportunity to prepare, and the rights of the co-defendant justifies the denial of the Dougherty's motion to continue.  The government submits that it does.

## V.    CONCLUSION

For all the reasons discussed above, and in the interests of justice, defendant Dougherty's Motion for a Continuance should be denied.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

/s/ *Frank R. Costello, Jr.*
FRANK R. COSTELLO, JR.
BEA L. WITZLEBEN
JASON GRENELL
ANTHONY CARISSIMI
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

This is to certify that I have caused to be delivered by email, a true and correct copy of the within pleading, to the following counsel:

Gregory Pagano
*Counsel for Defendant John Dougherty*

Thomas Bergstrom and Mark Kasten
*Counsel for Defendant Brian Burrows*

/s/ Frank R. Costello, Jr.
FRANK R. COSTELLO, JR.
Assistant United States Attorney

Date: September 25, 2023