IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | Docket No. |
| MARITA CRAWFORD | : | 0313 2:19 CR 64-005 |

## SENTENCING MEMORANDUM OF DEFENDANT MARITA CRAWFORD

The defendant, Marita Crawford by and through her attorney, Fortunato N. Perri, Jr. respectfully submits the following Memorandum to assist the Court in fashioning a just and fair punishment which is not greater than necessary to accomplish the fundamental objectives of sentencing as articulated in Title 18 U.S.C. § 3553(a).

**I.      INTRODUCTION**

On February 21, 2024, Marita Crawford will appear before this Court to be sentenced in connection with the crimes to which she has pled guilty and accepted complete responsibility.

**II.     PROCEDURAL HISTORY**

On January 29, 2019, a Grand Jury sitting in the Eastern District of Pennsylvania returned an Indictment charging Marita Crawford and several co-defendants with various criminal charges. On 12/19/22 Ms. Crawford entered a plea of guilty to Counts 50, 52, 57 and 68; wire fraud, conspiracy to commit wire fraud and aiding abetting.

1

In accordance with standard practices, at the time of the guilty plea, the Court ordered the preparation of a Pre-Sentence Investigation Report ("PIR"). The PIR was prepared by Senior U.S. Probation Office Megan Maier. Ms. Crawford's counsel has reviewed the contents of the PIR and the Court can feel free to adopt as accurate the information set forth within it.

### III. FACTUAL HISTORY

The facts and offense conduct relevant to Ms. Crawford's case are adequately set forth in the PIR at Paragraphs 19 through 27 and are not in dispute. Ms. Crawford admitted her role in the offense at her guilty plea hearing and has accepted complete responsibility for her crimes.

### IV. CALCULATION OF THE DEFENDANT'S RECOMMENDED SENTENCING RANGE UNDER THE FEDERAL SENTENCING GUIDELINES AND THE APPLICATION OF THE ZERO-POINT OFFENDER ADJUSTMENT

Although Officer Maier correctly calculated Ms. Crawford's offense level at 9 (PIR Paragraphs 34-42), she is entitled to an additional two level reduction pursuant to the recent Sentencing Guideline amendment § 4C1.1 (adjustment for certain zero-point offenders). Ms. Crawford has no prior convictions, so she has a total of zero criminal history points and a criminal history category of I. (PIR Paragraphs 43-46). According to the sentencing table at U.S.S.D.G. Chapter 5 Part A based on a total offense level of 7 and a criminal history category of I, The Guideline range for imprisonment is 0-6 months.

Ms. Crawford has no objections to Officer Maier's calculation. Nevertheless, because a sentence of Probation is minimally sufficient to meet the goals of sentencing, Ms. Crawford urges the Court to sentence her to a period of Probation.

V.   SENTENCING CONSIDERATIONS

As the Supreme Court has consistently asserted "(i)t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall v. United States, 552 U.S. 38, 52 (2007) quoting Koon v. United States, 518 U.S. 81, 113 (1996). This enduring principle was given new life in United States v. Booker, where the United States Supreme Court held that those provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory (18 U.S.C.§ 3553(b)(1), or which rely upon the Guidelines mandatory nature (18 U.S.C. §3742 (e) to be incompatible with the Sixth Amendment. 543 U.S. 220,244 (2005). Accordingly, the Court severed and excised those provisions, thereby rendering the Guidelines "effectively advisory". Id at 245.

The 3rd Circuit has developed a three-step approach to sentencing that district courts must follow in the wake of Booker:

(1)   Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.

3

  (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-<u>Booker</u> case law, which continues to have advisory force.

  (3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculation under the Guidelines.

<u>United States v. Gunter</u>, 462 F.3d 237, 247 (3rd Cir. 2006) (quotation marks, brackets, and citations omitted), citing <u>United State v. King</u>, 454 F.3d 187, 194, 96 (3rd Cir. 2006); <u>United States v. Cooper</u>, 437 F.3d 324, 329-30 (3rd Cir. 2006). Thus, steps one and two mirror the pre-<u>Booker</u> scheme, in which any sentence outside the applicable sentencing range must be imposed pursuant to the departure framework provided by the Guidelines.

  It is 18 U.S.C. § 3553(a), however, that ultimately governs the imposition of the defendant's sentence, with the Guidelines calculation operating as merely one factor amongst the variety of considerations listed in this statute. <u>See</u> <u>Booker</u>, 543 U.S. at 246. As the Supreme Court has emphatically stated, a sentencing judge "may not presume that the Guidelines range is reasonable." <u>Gall</u>, 128 S.Ct. at 596-97. Rather, it is the mandate in Section 3553(a) that "[t]he court shall impose a sentence sufficient, **but not greater than necessary**, to comply with purposes set forth in paragraph (2) of this subsection," that guides trial courts' sentencing determinations. 18 U.S.C. § 3553(a) (emphasis added).

These purposes, as listed in 18 U.S.C. § 3553(a)(2), include "the need for the sentences imposed--

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and
    (D)    to provide the defendant with needed education and vocational training, medical care, or other correctional treatment in the most effective manner.

Also, sentencing courts are directed to consider the following factors:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553(a)(1));
    (2)    the kinds of sentences available; (18 U.S.C. § 3553(a)(3));
    (3)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (18 U.S.C. § 3553(a)(6)); and
    (4)    the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7));

In addition to Section 3553, other statutory section also provide district courts with guidance in sentencing. In particular, in determining whether and to what extent imprisonment is appropriate based on Section 3553(a) factors, the judge is required to "recongniz[e] that imprisonment is **not** an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a) emphasis added). As the 3rd Circuit has been adamant in emphasizing, "[t]he record must demonstrate the trial court gave meaningful **considerations to the § 3553(a) factors. Cooper, 437 F. at 329.**

VI.    **BACKGROUND AND PERSONAL CHARACTISTICS**

Marita Crawford, who is 54 years old, was born in Philadelphia and raised in the Bridesburg section of the city. Ms. Crawford is a graduate of St. Hubert Catholic High School and attended Temple University. She is an only child of her parents, Ken and Marita. Sadly, Ms. Crawford's father was an alcoholic and struggled with mental health issues

5

throughout his life until his death in 2009.

Ms. Crawford was under constant stress throughout her childhood due to the father's struggles and the relationship between her parents. Additionally, she was sexually assaulted by a close neighbor which has had a devasting impact on her life and led to her moving out of the family home a few years later at age 18. Ms. Crawford has a son, Thomas (age 27), who she has raised on her own as a single parent. He currently resides with Ms. Crawford in Ventnor City, NJ.

Ms. Crawford has been employed in various capacities since the age of 13. Ultimately, her interest in public service led to a career working and consulting with labor organizations and elected public officials. Ms. Crawford's difficult childhood issues have helped her to become emotionally and intellectually independent.  She has tremendous compassion for others and this, along with her intellect and work ethic, has helped her become a tremendously valued wealth of knowledge and an asset as she has assisted a vast majority of individuals who have sought careers in public service. Ms. Crawford has an enormous heart as has been described over and over in the outpouring of support reflected in the character reference letters submitted by people whose lives she has touched.

Josy Sorrentino, who is an 83-year-old former neighbor of Ms. Crawford, writes:

> A brilliant and beautiful compassionate caring woman. Marita is a giving person who has helped me in my times of need, never failing to help and never asking anything in return but what she deserves, respect.
> A compassionate person who will go out of her way helping you, and here for me bringing me food knowing it is hard for me to cook and do things due to my disabilities and what a cook Marita is, WOW! I am so grateful for her. Wish there were more people like her, what a wonderful world it would be.

Honorable Joseph P. Walsh (Ret.) shares his view of Ms. Crawford:

> Throughout her career, Marita Crawford has been a tireless voice for the working class in Pennsylvania.  As someone who supports labor, I believe it to be of utmost importance that Ms. Crawford remain in a position of

advocacy for this vital segment of our society. To remove her from this role would cause great detriment, not only to labor but to our community at large.

John O'Neill, Esq. describes Ms. Crawford's devotion to helping others:

> In the years that have followed, I have come to find that what she said the first day that I met her was absolutely true. Marita's devotion to helping people and working to make her community better is not simply a character trait, it defines her. In the mostly male dominated worlds of organized labor and politics, Marita has earned a reputation as a fearless advocate for workers, woman and countless other unfairly treated groups of people in this area. I have personally seen her invest every last bit of her time, energy, and talent into helping people solely because she believes that their success in the labor movement, an election, or some other endeavor will be good for our community. She is truly a wonderful example of an altruistic person.
>
> Marita's abilities in the political world are not the only arena in which she has demonstrated her kind and compassionate soul. As someone who worked very closely with her for the last five years, I saw her time and again go out of her way to be a therapist, friend, shoulder to cry on, and so much more for everyone from the region's most powerful labor leaders and politicians to the destitute, mentally ill, and those struggling with addiction. Ms. Crawford is one of those people who is so empathetic that she is basically incapable of seeing that someone is in need of help and not coming to their assistance.

Amanda Hemmock specifically recounts an example of Ms. Crawford's compassion:

> I distinctly remember a time in which she reached out to me late one evening, for my professional advice, looking for help for an elderly woman, a neighbor I believe. I could sense compassion, but urgency in her voice. We spent hours on the phone and days after looking for resources and options to help this woman, who had literally no one to help her. From our conversations I would come to find out that not only was Ms. Crawford regularly checking in, but also making sure that the woman had eaten and that simple daily tasks, we often take for granted, were being met. It is just one of a hundred stories I personally can recount, but it has always stuck with me.

Retired Justice Seamus P. McCaffery offers his thoughts on Ms. Crawford:

> Marita Crawford is one of those rare professionals who learned her trade from the ground up, i.e, she didn't parachute in and think she knew it all. By working on countless political campaigns (including mine and my brother's), she developed into

7

> one of Pennsylvania's "go to" political professionals. Her hard work and dedication to ensure political victories for candidates who share her solid blue-collar, working class values has helped shape Pennsylvania's political landscape for decades to come.
>
> I have never known Marita to be unethical or to cross the line. It is my personal belief that if that ever did occur, it was unintentional. As they say, Marita is a "solid citizen" who can be trusted to do the right thing. I can't hear her name or visualize her without smiling. We have collaborated on many campaigns during my time in that world, and because of that, I feel that I know her not just as a hard-working professional, but also as a person. I believe that Marita has learned a hard lesson from this recent event and would never make such a mistake again.

Noelle Campolongo relates her thoughts to the Court:

> I've had the pleasure of meeting Marita Crawford through my mother many years ago. Over that time, she has been extremely kind and compassionate toward me and my daughter, Rose, who has Down syndrome, Autism and is now in remission and receiving treatment for ALL Leukemia. Marita has been a constant support to Rose and I. We have been through so much and she is always there to help us in any way she can.
>
> I started a dance a few years ago for children and adults with disabilities named after my daughter. Marita was always there helping to support the event in any way she could. Without her help, this event wouldn't have been possible. I know that Marita is a huge supporter of many children and what she does really makes them so happy. I know this firsthand. I hope that you would please consider this when you are making your decision.

Although Ms. Crawford stands before the Court to be sentenced for her misconduct, she has lived a life full of love, compassion and caring for others. She is dedicated to her family, community and the special bonds she has formed with others in her lifetime. As a result, Ms. Crawford has received overwhelming support from her family, friends and community and she is a shining example of how everyone should strive to live their lives to care for others. Her conduct in this matter is completely out of character and she has been consumed

with guilt for her actions but, fortunately, she'll have the love and support of those who have been a part of her long and giving life.

Ms. Crawford has lived life as an ordinary person who has always strived to make extraordinary efforts to improve the lives of others both in their good times as well as their struggles. Her son will benefit throughout his life from the virtues instilled by his mother that include hard work, family values and compassion for others. We would implore the Court to consider her lifetime of kindness and sentence Ms. Crawford to a sentence of Probation which would be a just and fair punishment under the circumstances.

**VII. SENTENCING REQUEST**

The Purposes of punishment detailed in Section 3553(a) of the Sentencing Guidelines can best be fulfilled by imposing a sentence of Probation. Although the Court may find that the seriousness of her offense justifies sentencing Ms. Crawford otherwise, pursuant to 18 U.S.C. § 3553(a)(2)(A), we implore the Court to impose a sentence of Probation in this case. We believe that applying the analytical model governing sentencing to Ms. Crawford's case supports such a sentence.

Apart from her lone divergence into criminal conduct, Ms. Crawford has been a model citizen who has greatly contributed to the lives of others throughout her life. There is no indication that she has ever engaged in criminal conduct beyond the conduct that has resulted in her present conviction. Whatever inclination to engage in criminality that she possessed which led her to engage in this conduct certainly has been eradicated by the disastrous consequences of her arrest and conviction have had on her personal and

professional life. As such, there is no risk of recidivism in this case and the need to impose a sentence accounting for specific deterrence with respect to Ms. Crawford would certainly be satisfied by imposing a sentence of Probation. Likewise has the exposure of Ms. Crawford's criminal activities sufficiently sent the message to the general public that the sort of conduct she engaged in will only result in arrest, conviction and serious sentencing, thus general deterrence is likewise satisfied.

    Thus, with the need for her sentence to "afford adequate deterrence to criminal conduct" and "protect the public from further crimes," these considerations appear to be completely satisfied by imposing a sentence of Probation 18U.S.C.§3553(a)(2)(B) and (C).

    Likewise, are there no benefits to a sentence other than Probation with respect to any "needed" educational and vocational training, medical care, or other correctional treatment U.S.C.§ 3553(a)(2)(D). In contrast, as the letters written to the Court clearly demonstrate, Ms. Crawford is remarkably capable of maintaining employment and is certainly in no need of education or vocational training. Nor is she subject to any problems, medical or otherwise, that would need to be addressed in some sort of institutional setting. Rather, considerations weigh towards imposing a sentence of Probation so that Ms. Crawford can provide for herself and her family as well as continue to maintain employment. The flexibility afforded under Booker in imposing an appropriate sentence certainly entitles the Court to take into account these grave collateral consequences in fashioning a just and appropriate sentence.

    Further considerations governing the imposition of sentence in this case also support sentencing Ms. Crawford to Probation. In considering the "nature and circumstances of the offense and the history and characteristics of the defendant," Ms.

Crawford's crime-though very serious-was a lone divergence in a life otherwise defined by selfless giving and extraordinary efforts to improve the lives of those around her. Of course, having been a good person all of her life does not excuse Ms. Crawford's crime; but in considering the "nature and circumstances of the offense" and "history and characteristics of the defendant," a sentence of Probation is supported in this case.

## VIII. CONCLUSION

Marita Crawford stands as the mercy of this court a remorseful and penitent woman. Based on the aforementioned reasons, we urge the court to impose a sentence of Probation in her case. Such a sentence would be "sufficient but not greater than necessary" to accomplish the purposes of sentencing set forth in the United States Sentencing Guidelines.

Respectfully submitted,

/s/ Fortunato N. Perri, Jr.\
FORTUNATO N. PERRI, JR.\
Attorney for the Defendant

## CERTIFICATE OF SERVICE

FORTUNATO N. PERRI, JR., Esquire, hereby certifies that a true and correct copy of the within Sentencing Memorandum has been served electronically upon the following:

      **Honorable Jeffrey L. Schmehl**
      **U. S. District Court Judge**

      **Frank R. Costello, AUSA**

      **Bea Witzleben, AUSA**

      **Jason Grenell, AUSA**

      **Anthony Carissimi, AUSA**

      **Megan A. Maier**
      **Senior U. S. Probation Officer**

      **/s/ Fortunato N. Perri, Jr.**
      **FORTUNATO N. PERRI, JR.,**
      **Esquire**
      **Attorney for defendant**
      **1845 Walnut Street, 19th Floor**
      **Philadelphia, Pa. 19103**